UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>JOSHUA LUCAS,<br><br>    Defendant.<br>_____/ | CR 14-00197 EMC (LB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY**<br><br>[Re: ECF No. 23] |

## INTRODUCTION

Joshua Lucas pleaded guilty in state court to being a felon in possession of a firearm and was sentenced to a year in county jail. Just before he was released, the federal prosecutor obtained an indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The Double Jeopardy Clause does not prohibit a second prosecution in federal court merely because an accused has been convicted or acquitted by a state court of the same basic charge. *See, e.g., Bartkus v. Illinois*, 359 U.S. 121, 128-29 (1959). That is because the governments are separate sovereigns. *Id.* But if the federal authorities commandeer the state's prosecutorial system, making it a sham, a cover for the federal prosecution, and the equivalent of another federal prosecution, then the Double Jeopardy Clause might bar the second federal prosecution. *See id.* at 123 (dictum). The Ninth Circuit applies this *Bartkus* exception as the controlling law in the Ninth Circuit. *See United States v. Zone*, 403 U.S. 1101, 1104 (9th Cir. 2005) (per curiam).

Because he believes that a successive federal prosecution is unusual after a conviction in state

1  court for the same crime, Mr. Lucas suspects collusion and wants discovery to try to prove it.

2  Because Mr. Lucas did not make a preliminary showing of collusion, the court denies the motion for

3  discovery.  *See Zone*, 403 F.3d at 1107.

**STATEMENT**

**I. THE STATE PROSECUTION**

According to the government, BART police arrested Mr. Lucas on October 15, 2013.  Berg Decl., ECF No. 25,[1] ¶ 1.  They tried to question him and two others about whether they had evaded paying fare, and Mr. Lucas gave a fake name.  *Id.*  When the officers "went" to check the identification, Mr. Lucas jumped the turnstile and fled.  *Id.* ¶ 2.  Officers warned him to stop or he would be tased, and he fled anyway.  *Id.*  An officer tased Mr. Lucas, and as he fell, a loaded handgun fell from his shorts.  *Id.*  A subsequent search revealed a second gun hidden in his shorts.  *Id.*  After he received *Miranda* warnings, Mr. Lucas admitted that he had the guns and gave a false name because there was a "parolee-at-large" warrant for his arrest.  *Id.*

On October 31, 2013, Mr. Lucas pleaded guilty to one count of being a felon in possession of a firearm.  *Id.*, ¶ 3.  On December 9, 2013, he received a two-year suspended sentence, one year in county jail, and three years' probation.  *Id*.  He completed his sentence on April 15, 2014, because he had 55 days credit from being in custody from arrest to sentencing, and good-time credits reduced his sentence by 50%.  Blank Decl., ECF No. 22, ¶ 2; Berg Decl., ¶ 5.

**II. THE TIME LINE OF FEDERAL PROSECUTION**

The grand jury returned a one-count 922(g) indictment against Mr. Lucas on April 3, 2014, based on his possession of the two firearms on October 15, 2013.  *See* ECF No. 1.  The government asked for the indictment to remain under seal, saying, "Because this matter is currently still under investigation and the defendant has not yet been arrested, the Government is concerned that public disclosure of this case may prompt the defendant's accomplices and co-conspirators to try to obstruct the investigation by fleeing or hiding."  *See* Application for Sealing Order, ECF No. 2.  Government counsel explained at the hearing that she used a form, that the case is a single-defendant gun case

---

[1] Citations are to the electronic case file ("ECF") with pin cites to the electronically-stamped numbers at the top of the page, not the numbers at the bottom of the page.

UNITED STATES DISTRICT COURT
For the Northern District of California

1 and nothing more, and there are no accomplices or co-conspirators.

2 On April 14, 2014, the government sought a writ to bring Mr. Lucas from state custody to
3 federal court on April 16, 2014. *See* ECF No. 3. The writ issued, and Mr. Lucas made his initial
4 appearance on April 16, 2014. *See* ECF No. 5.

**III. THE DISCOVERY**

In his discovery request, counsel asked for the following: "I am writing to request that you disclose to me any and all information regarding the coordination of firearms investigations and prosecutions between the federal government here in the Northern District of California and state law enforcement authorities here in the Northern District of California and state law enforcement authorities in the City and County of San Francisco, California, for the past 10 years, and particularly in the instant case of Joshua Lucas, who was arrested on October 15, 2013." Blank Decl., Ex. A, ECF No. 22-1 at 2. The motion narrows the request to five categories and tethers each to discovery that "may have played a role in the successive charging of Mr. Lucas in this case:" (1) any policy or memorandum of understanding between the United States Attorney and the San Francisco District Attorney, Sheriff, or Police Department regarding coordination in the investigation and prosecution of firearms; (2) any documentation of any informal agreement or practice of coordination among these same law enforcement entities; (3) the identity of any cross-designed federal and state law enforcement officials; (4) evidence about when federal authorities became aware of Mr. Lucas's state prosecution and the timing of their decision to charge him federally; and (5) the documentation of the claimed *Petite* waiver, including when the government obtained it. Motion, ECF No. 23 at 10-11; Reply, ECF No. 26 at 5.

**IV. THE REFERRAL AND THE HEARING**

The district court referred the issue of whether Mr. Lucas is entitled to discovery to the undersigned. *See* ECF No. 27. The court asked to see a copy of the discovery, and the government lodged a copy that the court reviewed. Generally, it consists of the following: (1) a record of proceedings in state court; (2) the BART police reports, which identify the police officers involved in the investigation; (3) witness statements; (4) the indictment in this case; (5) Mr. Lucas's criminal history; and (6) the ATF firearms analysis showing that the firearms have a nexus to interstate

1 commerce.  The court held a hearing on October 2, 2014.  The parties agreed at the hearing that this
2 was a fair characterization of the discovery and that the discovery did not contain any documentation
3 of any referral to the federal government for prosecution.

## ANALYSIS

5 The issue is whether Mr. Lucas is entitled to discovery to try to prove improper collusion that
6 makes the state prosecution the equivalent of a federal prosecution, thus triggering a Double
7 Jeopardy bar of the federal prosecution under the *Bartkus* exception.  *See Zone*, 403 F.3d at 1105.
8 Because Mr. Lucas did not make a sufficient showing of inter-sovereign collusion, as opposed to
9 mere inter-sovereign cooperation, the court denies the discovery motion.  *See id.*

10 As the *Bartkus* and *Zone* decisions point out, close collaboration between state and federal
11 prosecutors is conventional practice.  *Bartkos*, 359 U.S. at 123; *Zone*, 403 F.3d at 1107.  For this
12 reason, the *Zone* court held that to obtain discovery, Zone needed to make a preliminary showing of
13 inter-sovereign collusion, not just cooperation.  *See id*.  Here, as in *Zone*, Mr. Lucas points only to a
14 newspaper article and his suspicions related to the close timing.  That was not a sufficient showing
15 to establish an entitlement to discovery in *Zone,* and thus it is not sufficient here.

16 Moreover, discovery into the first two categories (formal and informal agreements about
17 coordination) would show only cooperation, not collusion.  The same is true of category three, the
18 identity of cross-designated law enforcement officers.  One can assume that the cooperation takes
19 place, as the *Zone* and *Bartkus* decisions did, and it is common knowledge that agents are cross-
20 designated.  Indeed, the United States Attorney's website, as the government attorney conceded at
21 the hearing, is replete with examples of joint investigations resulting in federal charges.  It is not
22 unusual for someone to be charged first in state court and then prosecuted federally.  The
23 government also pointed to several similar cases involving the government's decision under the
24 *Petite* policy to prosecute someone in federal court following a conviction in state court.  *See* Berg
25 Decl., ECF No. 25, ¶ 6.  Successive prosecutions do not transform cooperation into collusion or even
26 establish a preliminary showing of collusion.  If they did, every successive prosecution under the
27 government's *Petite* policy would allow a discovery expedition into the government's motives for
28 bringing the federal case.

1  Also, the *Petite* policy, which is a government internal policy, does not give Mr. Lucas any
2  substantive rights. If the government violated the *Petite* policy, Mr. Lucas could not seek dismissal
3  of the indictment on that ground. *See United States v. Garner*, 632 F.2d 758, 761 (9th Cir. 1980). In
4  any event, the timing of the government's seeking the *Petite* waiver does not establish collusion with
5  the state either. It merely shows the approval process by the appropriate Assistant Attorney General
6  that allows the local prosecutor to bring a successive prosecution. *See* USAM 9-2.031.

7  Mr. Lucas nonetheless argues that *Brady v. Maryland* requires the government to produce the
8  discovery. The *Brady* obligation is that a prosecutor has to provide information to a defendant that is
9  exculpatory or impeaching and material to guilt or punishment. *See United States v. Jerrigan*, 451
10 F.3d 1027, 1030 (9th Cir. 2006). Evidence is material if there is a reasonable probability that, had
11 the evidence been disclosed to the defense, the result of the proceeding would have been different.
12 *See Kyles v. Whitley,* 514 U.S. 419, 433, 437 (1995). The materiality standard is met when "the
13 favorable evidence could reasonably be taken to put the whole case in a different light so as to
14 undermine confidence in the verdict." *Banks v. Dretke*, 540 U.S. 668, 698-99 (2004).

15 The problem is that *Zone* requires Mr. Lucas to make a preliminary showing of collusion to even
16 obtain discovery. Mr. Lucas posits that the *Zone* defendant never raised *Brady* as a ground for
17 obtaining discovery, and he argues that *Brady* requires disclosure without any prima facie showing.
18 Motion, ECF No. 23 at 14-15. That argument does not change the outcome. Because of the
19 separation of powers doctrine, a prosecutor has broad discretion to initiate prosecutions. *See United*
20 *States v. Armstrong*, 517 U.S. 456. 464 (1996). So long as there is probable cause, the decisions
21 about whether or not to prosecute, what charges to file, and whether to plea bargain are the
22 prosecutor's. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The discretion is not
23 unlimited: the prosecutor cannot have a constitutionally-impermissible motive. But there has to be
24 something more than a hunch before one gets discovery about the prosecutor's motive. For
25 example, to obtain discovery to support an equal protection challenge to a prosecutor's alleged
26 selective prosecution based on an impermissible ground such as race, defendants must demonstrate
27 some evidence tending to show the existence of a discriminatory intent or a discriminatory effect.
28 *See Armstrong*, 517 U.S. 469-70.

Mr. Lucas points out that the presumption of regularity that attaches to the prosecution decision, and the resulting initial burden on a defendant to obtain discovery, do not necessarily translate to other constitutional challenges to an indictment. *See* Motion, ECF No. 23 at 13 n.2. He cites two examples: probable cause and the Speedy Trial Clause. Neither is an inquiry about the government's discretionary decision to prosecute.

Probable cause operates as a constitutional constraint on the government's decision to prosecute, but the prosecution's burden is only that it must present evidence of probable cause to the grand jury. After the grand jury finds probable cause and returns an indictment, courts do not entertain challenges to a facially-valid indictment on the ground of insufficient evidence. *See Costello v. United States*, 350 U.S. 359, 363-364 (1956).

Challenges to post-accusation delay under the Sixth Amendment also are not about the charging decision and instead are about delay. Under the *Barker v. Wingo* test, a court examines only (1) the length of the delay, (2) the reason for the delay, (3) whether, when, and how a defendant asserted his speedy trial right, and (4) whether the defendant was prejudiced by the delay. *See Doggett v. United States*, 505 U.S. 647, 652 (1992); *Barker v. Wingo*, 407 U.S. 514, 534 (1972). Even then, a court examines factors 2 through 4 only if the delay is presumptively unreasonable (usually more than a year). *See Doggett*, 505 U.S. at 652. And then, either the reasons for delay are revealed by the record or, in the case of the government's failure to arrest a defendant, the inquiry is not about the government's charging decision and instead is about the government's negligence in failing to arrest the defendant sooner. *See id.*

Applying *Zone*, which is controlling, Mr. Lucas has not made a preliminary showing of collusion to get discovery. Moreover, "preliminary showing" is not necessarily the same as *Armstrong*'s "some evidence" standard. For example, in the vindictive prosecution cases, a presumption of vindictiveness can attach to situations where the facts and context establish a reasonable likelihood of vindictiveness. *See Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974). In *United States v. Jenkins*, for example, there was a presumption of vindictiveness when the government indicted a defendant on alien smuggling charges after she testified in her defense at a drug trial, and the government knew about the alien smuggling charges and brought them only after she testified. *See* 504 F.3d

694, 699-701 (9th Cir. 2007). Put another way, events can infer vindictiveness. No inference exists here.

Moreover, without conceding that evidence of collusion is *Brady*, the government counsel said in her declaration that no evidence of collusion exists, and it would produce evidence if it existed or if the government at any time discovered that it existed. Opposition, ECF No. 23 at 11; Berg Decl., ¶ 7. That ends the discovery issue too. Defense counsel nonetheless argued that he was entitled to explore government counsel's assertion. The court disagrees and finds the declaration and representations sufficient.

Mr. Lucas's other cited cases do not change the outcome that he is not entitled to discovery. *United States v. Belcher* involved a single cross-designated prosecutor in state and federal court and thus did not involve independent decisionmakers. 762 F. Supp. 666, 671-72 (W.D. Va. 1991); *see also United States v. Bernhard,* 831 F.2d 181, 182-83 (9th Cir. 1987) (same; remanded for fact finding). In *United States v. Scholz,* federal agents arranged the initial state prosecution as a decoy to avoid panicking the defendants' co-conspirators. 899 F. Supp. 484, 487-88 (D. Nev. 1995). All cases had something that suggested that one sovereign was the "tool" of the other. *See,* e.g., *United States v. All Assets of G.P.S. Automotive Corp.*, 66 F/3d 483, 494-96 (2nd Cir. 1995) (remanding for consideration of whether state's receipt of forfeiture proceeds from the federal action made the federal case a "tool" of the state as opposed to evidence of mere cooperation).

The government argues additionally that categories 1 and 2 seek government reports and documents that are not disclosable under Rule 16(a)(2). The rule does not require disclosure of reports, memoranda, or other internal government documents made by the attorney for the government, or other government agent in connection with the investigation or prosecution of the case. This is, in effect, a work product rule. On this record, it is not clear that any task force agreements or memoranda of understanding would be reports "in connection with the investigation or prosecution of the case." Because the court decides the issues on other grounds, it need not reach the Rule 16 argument.

**CONCLUSION**

The court denies the motion for discovery.  This disposes of ECF No. 23.

**IT IS SO ORDERED.**

Dated: October 3, 2014


_____
LAUREL BEELER
United States Magistrate Judge