UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSHUA LUCAS,<br><br>    Defendant.<br>_____/ | No. CR-14-0197 EMC<br><br>**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY**<br><br>**(Docket Nos. 23, 38)** |

## I.  INTRODUCTION

Defendant Joshua Lucas' objections to Magistrate Judge Beeler's order denying his motion for discovery was heard on November 25, 2014.  Defendant's motion for discovery sought information relating to the level of federal and state cooperation – and potential collusion – in Defendants' prosecutions for being a felon in possession of a firearm, evidence which would support a defense of Double Jeopardy.  For the reasons stated on the record, as supplemented herein, Defendant's objections are **OVERRULED**.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

According to the government, Defendant was detained by BART police officers on October 15, 2013 for fare evasion.  Declaration of Arianna Berg ("Berg Decl.") ¶ 2 (Docket No. 25).  He provided the officers a fake name and, when the officers stepped back to check his identification, Defendant jumped a turnstile and ran.  *Id.*  The officers warned Defendant that if he did not stop he would be tased.  *Id.*  Defendant did not stop, and the officers tased him.  *Id.*  As he fell, a fully-

loaded .380 handgun fell from his shorts. *Id.* While handcuffing Defendant, the officers found a second, fully-loaded handgun in his shorts. *Id.*

On October 31, 2013, Defendant pled guilty to state charges of being a felon in possession of a firearm in violation of California Penal Code § 29800. *Id.* ¶ 3. On December 9, 2013, Defendant was sentenced to a 2 year suspended sentence, 1 year in county jail, and 3 years' probation. *Id.*

On April 4, Defendant was indicted in federal court on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Docket No. 1. The indictment was based on Defendant's alleged possession of the two firearms on October 15, 2013 – the same events that led to the state prosecution. *Id.* A Writ of Habeas Corpus Ad Prosequendum issued on April 14, 2014, directing state authorities to produce Defendant for prosecution in federal court. Docket No. 3, at 4. In light of good-time credits (as well as the time he spent in jail prior to his sentencing), Defendant completed his state sentence on April 15, 2014. Berg Decl. ¶ 5; Declaration of Daniel P. Blank ("Blank Decl.") ¶ 2 (Docket No. 22).

Three months later on July 16, 2014, Defendant filed a motion to compel discovery. Defendant was seeking disclosure of "any and all information regarding the coordination of firearm investigations and prosecutions between the federal government here in the Northern District of California and state law enforcement authorities in the City and County of San Francisco, California, for the past 10 years and particularly in the instant case of Joshua Lucas, who was arrested on October 15, 2013." Docket No. 21, at 6; *see also* Blank Decl., Ex. A (June 5, 2014 letter from defense counsel to AUSA requesting this information). In his motion to compel, Defendant asserted that this request "plainly includes but is not limited to" the following categories of information:

- Any formal policy or memorandum of understanding between the U.S. Attorney's Office and the San Francisco District Attorney's Office, Sheriff's Department or Police Department regarding coordination in the investigation or prosecution of firearm cases, including the "Trigger Lock" program.

- All letters, memoranda, or other documentary evidence about informal agreements, understanding or practice of coordination between the U.S. Attorney's Office and the San Francisco District Attorney's Office, Sheriff's Department, or Police Department.

2

- Any state/federal cross-designation of law enforcement officials in firearms cases in San Francisco.

- All letters, emails, or other documentation showing the point at which federal authorities became aware of the state prosecution of Defendant and the communications that occurred between federal and state authorities.

- The record of the federal *Petite* waiver in Defendant's case, including when it was obtained.

Docket No. 21, at 10-11. The government opposed Defendant's motion to compel, and this Court referred the dispute to Magistrate Judge Beeler. Docket No. 27.

Judge Beeler denied Defendant's motion for discovery on October 3, 2014. Docket No. 33. Judge Beeler found that Defendant had failed to make a sufficient preliminary showing of inter-sovereign collusion, as opposed to mere inter-sovereign cooperation. *Id.* at 4. As discussed below, a claim of violation of the Double Jeopardy Clause requires proof of the former. Judge Beeler found that the fact that federal and state authorities cooperate in investigations (including with cross-designated law enforcement) and the fact that a federal prosecution followed state prosecution did not cause "cooperation" to transform into improper collusion. *Id.* Further, she rejected Defendant's argument that he was entitled to the requested evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), finding conclusive the fact that the AUSA had asserted that "no evidence of collusion exists, and it would produce evidence if it existed or if the government at any time discovered that it existed." Docket No. 33, at 7.

### III.   DISCUSSION

The Double Jeopardy Clause protects individuals from being "subject[ed] for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. However, where a "defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" *Heath v. Alabama*, 474 U.S. 82, 88 (1985) (quoting *United States v. Lanza*, 260 U.S. 377, 382 (1922)). Stated another way, the dual sovereign exception to the Double Jeopardy Clause provides that "the prohibition against twice being placed in jeopardy does not foreclose a second prosecution by a different sovereign for the same offense." *United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990). Accordingly, the federal government is not

precluded by the Double Jeopardy Clause from subsequently prosecuting an individual who has been prosecuted for the same conduct by a state government. *See United States v. Enas*, 255 F.3d 662 (9th Cir. 2001) ("[I]t is clearly established that state and federal governments each prosecute pursuant to their own sovereign power. Thus, multiple prosecutions among these entities are permissible. A federal prosecution may follow a state prosecution for the same acts.").[1]

There is an exception to the federal government's ability to bring a subsequent prosecution based on the same acts already prosecuted by state authorities. Based on dicta from the Supreme Court's decision in *Bartkus v. Illinois*, 359 U.S. 121 (1959), courts, including the Ninth Circuit, have barred subsequent federal prosecution where "federal authorities commandeer a state's prosecutorial machinery, converting the state prosecution into 'a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.'" *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005) (quoting *Bartkus*, 359 U.S. at 123-24). This exception has been defined as "narrow" and will apply only where federal prosecutors "'so thoroughly dominate[] or manipulate[] the [state's] prosecutorial machinery . . . that the latter retains little or no volition in its own proceedings.'" *Id.* (quoting *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996) (alterations in original)); *see also United States v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976) ("The burden . . . of establishing that federal officials are controlling or manipulating the state processes is substantial; the [defendant] must demonstrate that the state officials had little or no independent volition in the state proceedings.").

---

[1] In practice, the federal government has adopted the *Petite* policy to determine when it will pursue charges against an individual who has already been prosecuted by state authorities. "The *Petite* Policy, an internal policy of the Department of Justice, states that a federal prosecution should not be based on substantially the same acts that were the basis for a prior state prosecution unless there is a compelling federal interest." *United States v. Larsen*, 427 F.3d 1091, 1094 (8th Cir. 2005). Before a subsequent federal prosecution can proceed, a recommendation must be made to, and approved by, the Assistant Attorney General demonstrating compelling federal interests for the prosecution. *United States v. Mardis*, 600 F.3d 693, 699 (6th Cir. 2010) (citation omitted). The policy is an internal Department of Justice guideline and does not create and substantive or procedural rights to a criminal defendant. *See, e.g.*, *United States v. Snell*, 592 F.2d 1083, 1088 (9th Cir. 1979) ("Assuming arguendo that the second prosecution violates the Petite policy, we conclude that such a violation of the internal housekeeping rules of the Department of Justice does not entitle Snell to dismissal of the indictment."); *see also United States v. Jackson*, 327 F.3d 273, 295 (4th Cir. 2003) ("[I]t is well established that the *Petite* policy and other internal prosecutorial protocols do not vest defendants with any personal rights."). Neither party contends the *Petite* policy tracks the Double Jeopardy Clause.

4

Significantly, *Bartkus* does not prevent federal and state law enforcement or prosecutorial officials from cooperating with one another. The Supreme Court itself recognized that the fact that "federal officials acted in cooperation with state authorities" is the "conventional practice between the two sets of prosecutors throughout the country." *Bartkus*, 359 U.S. at 678. The Court concluded that this routine cooperation was insufficient to support a finding that a state brought a prosecution as a mere "tool of the federal authorities" or "a sham and a cover for a federal prosecution." *Id.* Thus, as

> "*Bartkus* makes plain, there may be very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that maximum assistance is mutually rendered by the sovereigns. . . . No constitutional barrier exists to this norm of cooperative effort."

*Zone*, 403 F.3d at 1105 (quoting *United States v. Figueroa-Soto*, 938 F.2d 1015, 1020 (9th Cir. 1991)). Thus, for example, "[e]very circuit to consider the issue has held that the cross-designation of a state law enforcement agent or district attorney as a federal official to assist or even to conduct a federal prosecution does not bring a case within the *Bartkus* exception." *United States v. Angleton*, 221 F. Supp. 2d 696, 715 (S.D. Tex. 2002), *aff'd* 314 F.3d 767 (5th Cir. 2002). Similarly, the "Double Jeopardy Clause does not prevent federal prosecutors from encouraging their state counterparts to pursue plea bargains, nor does it prevent them from taking advantage of the evidentiary record developed in connection with a defendant's previous state conviction." *Zone*, 403 F.3d at 1104.

The substantive line between permissible cooperation and impermissible collusion is relevant to Defendant's request for discovery as to the relationship between federal and state cooperation. In *United States v. Zone*, the defendant – much like Defendant in this case – was prosecuted for being a felon in possession of a firearm several months after his state court prosecution had terminated in a plea bargain. *Zone*, 403 F.3d at 1103. The defendant, "[s]uspecting that federal prosecutors might have orchestrated the prior plea proceedings in order to secure an admission of guilt for use in federal court," sought the "records from the [federally funded, gun violence] task force's weekly meetings." *Id.* Defendant hoped that "these records would establish federal prosecutors' collusion

with, or domination of, their county counterparts in the task force." *Id.* at 1104. The district court denied defendant's motion to compel this discovery, and the Ninth Circuit affirmed. The court noted that to "'obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.'" *Id.* at 1107 (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). It then held that the district court did not abuse its discretion in denying defendant's discovery request, because he had failed to "make a preliminary showing of 'inter-sovereign collusion,' as opposed to mere 'inter-sovereign cooperation.'" *Id.* In concluding that this showing had not been made, the Court rejected defendant's proffer of newspaper articles which "report the task force's formation and describe its mission. These articles contain general information that at most suggests that federal and state prosecutors collaborate as equal, independent partners in the task force's weekly strategy sessions." *Id.* at 1105.

Defendant's "preliminary showing" of collusion in this case is indistinguishable from that in *Zone*. The declaration filed in support of defendant's motion to compel cites a 2005 San Francisco Chronicle article entitled *"Trigger Lock" law helps cut gang-related killings in half/Focus on Bayview, Western Addition showing results*. The Court, having reviewed this article, notes that this article merely reports that the "number of killings in San Francisco attributed to gangs . . . has dropped by more than 50 percent so far this year from 2004, thanks in part to intervention by federal law enforcement." *See* http://www.sfgate.com/bayarea/article/SAN-FRANCISCO-Trigger-Lock-law-helps-cut-2621421.php. Like the newspaper articles in *Zone*, this article merely demonstrates the presence of cooperation between federal and state officials in addressing gun violence, and does not suggest that the state prosecutorial machinery had been preempted by federal officials. The article is completely silent as to the role, if any, the federal government played in the state prosecutorial process (or vice versa). As in *Zone*, this article fails to even suggest collusion (as opposed to cooperation) between state and federal officials. The article's reference to "intervention" refers not to the federal government commandeering and controlling the state prosecution, but rather, as defense counsel acknowledged at the hearing, bringing federal prosecutions seeking steep penalties instead of leaving prosecutions solely with local officials under state laws which typically carry lighter sentences.

6

Similarly, Defendant's reliance on the "documented historical relationship, going back approximately 10 years" between the U.S. Attorney's Office and the San Francisco Police Department and District Attorney's Office is not only vague and amorphous, but it suggests nothing more than the active cooperation permitted under *Bartkus* and *Zone*.

Defendant also points to cross-designation state law-enforcement officers as evidence of collusion. However, as discussed above, such cross-designation is routine and does not amount to collusion. *See Angleton*, 221 F. Supp. 2d at 715. More significantly, the government at the hearing on Defendant's objections to Judge Beeler's ruling affirmatively represented that none of the state or federal law enforcement or prosecutorial officers involved in Defendant's case are cross-designated. Defendant presented nothing to suggest otherwise.

Finally, Defense counsel asserts, based on his personal experience, that it is "exceedingly rare" for an individual to be prosecuted federally after completing his state court sentence. Docket No. 38, at 5; *see also* Blank Decl. ¶ 6. The government in this case, however, has provided, after an "informal poll of prosecutors" provided five examples over the past 5 years of similar federal prosecutions. Berg Decl. ¶ 6. In any event, the rarity of such prosecutions is not evidence of collusion prohibited by *Bartkus*.

Simply put, Defendant has failed to make the preliminary showing required by *Zone*. He has not distinguished this case from the showing made in *Zone*, where the presence of newspaper articles and the existence of a joint federal-state task force addressing gun violence (which, based on the opinion, held "weekly meetings to discuss and coordinate participants' activities," *Zone*, 403 F.3d at 11303) was found to be insufficient to open the door to discovery as to the circumstances underlying the decision the bring federal charges. The record herein is completely devoid of any evidence suggesting federal control over his state prosecution. No federal officials were shown to have been involved in the investigation or prosecution of the state court case.

At the hearing, Defendant acknowledged that his concern was not that federal officials had dominated the state proceedings, but rather that state law enforcement officials may have exerted undue influence on the federal prosecutorial process – a kind of reverse-*Bartkus* scenario. In support of this theory, Defendant cites *United States v. Belcher*, 762 F. Supp. 666 (W.D. Va. 1991).

7

1  In that case, a single individual, Tim McAfee, served as a state prosecutor and a Special Assistant
2  United States Attorney. *Id.* at 668. Mr. McAfee first brought an against a defendant in Virginia
3  state court for manufacturing marijuana and using a firearm in commission of a felony. *Id.* For
4  some reason, the state destroyed the subject marijuana plants the defendant was accused of
5  manufacturing. *Id.* On this basis, the state court dismissed the indictment against the defendant on
6  due process grounds. *Id.* Subsequently, Mr. McAfee, in his role as a Special Assistant United States
7  Attorney, drafted a three-count federal indictment for manufacture of marijuana, conspiracy to do so,
8  and using or carrying a firearm in relation to a drug trafficking crime. *Id.* at 669. The district court
9  dismissed the indictment on Double Jeopardy grounds, finding that the "very nature of the powers
10 McAfee possesses" rendered the federal prosecution "simply 'a sham and a cover' for the first,
11 unsuccessful prosecution of [the defendant] in a Virginia court." *Id.* at 671.

Defendant's reliance on *Belcher* is misplaced. First, neither the Supreme Court nor the Ninth Circuit has addressed or embraced a reverse-*Bartkus* theory. In any event, assuming such a theory was viable, in *Belcher*, the state prosecutor also served as a specially designated federal prosecutor, and thus prosecutorial discretion of both the state and United States was exercised by a single individual. While this could give rise to Double Jeopardy concerns, that concern is simply not raised in a situation where state *law enforcement* officers are merely cross-designated to assist in federal investigations. It is even less so here where there was not even cross-designation of any kind. *Cf. Zone*, 403 F.3d at 1104 (noting that federal officials "encouraging their state counterparts to pursue plea bargains" or "taking advantage of the evidentiary record developed in connection with a defendant's previous state conviction" is acceptable).

Defendant's final argument is that he is entitled to the information he has requested under *Brady v. Maryland*. He relies primarily on *United States v. Agurs*, 427 U.S. 97 (1976), where the Supreme Court noted that the "test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." *Id.* at 106. The Court stated:

> In *Brady*, the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of

8

> everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.

*Id.* In the instant case, Defendant argues that because he has made a request for specific information, he is either entitled to the materials or to have the Court review the challenged material *in camera*. The Court disagrees.

As the above quote demonstrates, the *Agurs* Court was addressing circumstances where a defendant makes a specific request under *Brady* for discovery that is either material or for which there is a "substantial basis for claiming materiality exists." *Id.* As discussed above, Defendant has failed to make a preliminary showing under *Zone* that there has been impermissible federal and state collusion in this case. While *Zone* did not expressly address *Brady*, there is no logical reason to ignore the "preliminary showing" required under *Zone* in applying the *Agurs* requirement that there be a "substantial basis" for concluding that materiality exist under *Brady*. To hold otherwise would permit Defendants to make an end run around *Zone* simply by characterizing their request for discovery as a *Brady* request instead of one under Rule 16. For the reasons stated above, Defendant has not made a sufficient showing of materiality under *Agurs*.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's objections to Judge Beeler's discovery order are **OVERRULED**.

This order disposes of Docket No. 38.

IT IS SO ORDERED.

Dated: December 8, 2014

_____
EDWARD M. CHEN
United States District Judge